**BRISTOL–MYERS SQUIBB COMPANY, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, David A. Kessler, Commissioner of Food and Drugs, Defendants.**

**Civ. A. No. 94–2726 SSH.**

United States District Court, District of Columbia.

July 21, 1995.

Terry S. Coleman, Fox, Bennett & Turner, Washington, DC, for plaintiff.

Jacqueline Helin Eagle, U.S. Dept. of Justice, Office of Consumer Litigation, Washington, DC, David M. Fox, Asst. Chief Counsel for Enforcement, U.S. Food and Drug Admin., Rockville, MD, for defendants.

*OPINION*

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment, and defendants' motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the motions, the Court grants defendants' motion to dismiss.

For purposes of a motion to dismiss, "the Court accepts as true all material allegations of the complaint." *United Transp. Union v. Interstate Commerce Comm'n,* 891 F.2d 908, 911 (D.C.Cir.1989), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990) (citing *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis. *See* Fed. R.Civ.P. 52(a).

*Background*

Plaintiff is Bristol–Myers Squibb Company ("BMS"), a manufacturer of antibiotics. Defendants, named in their official capacities, are Donna Shalala, Secretary of Health and Human Services, and David Kessler, Commissioner of Food and Drugs. Plaintiff challenges the validity of the determination of the United States Food and Drug Administration ("FDA") that the FDA may approve abbreviated antibiotic drug applications ("AADAs") manufactured from a non-conforming bulk substance. Plaintiff seeks a declaratory judgment that the FDA's ruling is inconsistent with the agency's own regulations and is in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The FDA has moved to dismiss the complaint on the ground that plaintiff lacks constitutional standing or, in the alternative, for summary judgment on the ground that its decision is consistent with agency regulations.[1]

The Federal Food, Drug, and Cosmetic Act, ("the Act") 21 U.S.C. § 301 *et seq.,* governs the approval of antibiotic drugs. Under the Act, the original manufacturer of an antibiotic drug product must submit a "full" application to the FDA including the clinical test results of the drug. Clinical testing must demonstrate that the antibiotic satisfies the "characteristics of identity, strength, quality, and purity necessary to adequately ensure safety and efficacy of use." 21 C.F.R. § 314.300(d)(1); *see* 21 U.S.C. § 357. Upon approval of an antibiotic drug, the FDA issues a "monograph," that is, a regulation which establishes the standards of identity, strength, quality, and purity for the product based on the data submitted in the application.

By contrast, a generic manufacturer may submit an "abbreviated application" to the agency for "drug products that are duplicates of, or that meet the monograph for, an antibiotic drug for which FDA has approved an application." 21 C.F.R. § 314.92(a)(2). Under the abbreviated procedure, a generic manufacturer is not required to produce the results of clinical testing as long as the finished product satisfies the standards contained in the monograph for the pioneer version of the finished product.

It is important to note the difference between a finished drug product and a bulk substance. A finished drug product is the form of a drug that is ultimately marketed and administered to patients; a bulk substance, on the other hand, is the active ingredient from which the finished product is derived. 21 C.F.R. § 314.3. Separate monographs are issued for each.

Finished generic products that have been approved may be rated by the FDA as therapeutically equivalent to the pioneer version of the drug product in the agency's *Approved Drug Products with Therapeutic Equivalents* (also known as the Orange Book). The rating allows pharmacists to substitute the generic version of the antibiotic for the original product.

Since mid–1973, plaintiff has held an approved application for the finished product Blenoxane®, an anti-cancer drug which is derived from the bulk substance sterile bleomycin sulfate. In 1975, the FDA issued two monographs based on the standards established for Blenoxane—one for the bulk substance and another for the finished drug product.

On October 4, 1994, the FDA announced in the Federal Register that it had received an application for the bulk substance *non*-sterile bleomycin sulfate. On the basis of this application, the FDA was prepared to issue a new bulk monograph for the non-sterile bleomycin sulfate substance. *See* Antibiotic Drugs; Bleomycin Sulfate, 59 Fed.Reg. 50484 (1994). Unlike the bulk monograph for sterile bleomycin sulfate, the proposed bulk monograph for non-sterile bleomycin sulfate did not call for sterility or non-pyrogenicity in the bulk substance. The FDA's October 4 announcement did not affect the standards contained in monograph for the finished product sterile bleomycin sulfate.

On October 28, 1994, pursuant to 21 C.F.R. § 10.35, plaintiff petitioned the FDA for an

---

1. Defendants have also moved for dismissal on the grounds that plaintiff's case is not ripe for review. Because the Court finds that plaintiff lacks standing, the Court need not resolve this issue.

immediate stay of the new bulk monograph on the ground that it violated the APA. Plaintiff also sought a stay of approval of any abbreviated applications based on the standards contained in the October 4 monograph.

In a letter dated November 9, 1994, the FDA agreed to stay the effective date of the bulk monograph while it reviewed the APA issues raised by plaintiff. The FDA refused to stay the approval of abbreviated applications for finished drug products based on the October 4 monograph stating that "the agency may review and approve a bulk antibiotic drug application that meets applicable requirements whether or not there is a published monograph." Plaintiff's Motion for Summary Judgment, Ex. B at 1. Plaintiff challenges this determination as being in violation of 21 C.F.R. § 314.92(a)(2).

### Discussion

Article III limits the jurisdiction of the federal courts to actual cases or controversies. A core component of the case or controversy requirement is standing. Because "the standing inquiry determines whether or not a party is entitled to have the courts decide the merits of the dispute," it cannot be overlooked. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Unless plaintiff satisfies this threshold inquiry, the Court is without authority to adjudicate the dispute and must dismiss the case for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

■ To establish standing, plaintiff must allege: (1) " 'injury in fact'—an invasion of a legally-protected interest, which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural or hypothetical' ''; (2) a causal connection between the injury and the challenged action; and (3) the injury must be likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing standing. *Id.*

Plaintiff claims that it satisfies the injury in fact test for standing because the FDA's decision threatens plaintiff with economic harm. Plaintiff argues that the challenged ruling authorizes the FDA to improperly approve drug products which will be regarded by the public as substitutes for Blenoxane, despite the fact that these finished generic products would be derived from a non-conforming bulk substance.[2] The FDA contends that plaintiff has failed to demonstrate injury in fact on the grounds that: (1) plaintiff's claim of competitive injury is not sufficiently imminent; and (2) the allegation of injury is itself speculative.

#### A. Injury Is Not Sufficiently Imminent

■ The FDA contends that plaintiff does not suffer imminent competitive harm because the agency has not approved a drug product under the challenged ruling. Plaintiff contends that the potential for competitive injury is sufficient, urging the Court to follow *Fisons Corp. v. Shalala,* 860 F.Supp. 859 (D.D.C.1994). In *Fisons,* a pharmaceutical company challenged an FDA regulation which would have waived all *in vivo* bioequivalence and purity testing for generic versions of the plaintiff's finished drug product. Despite the fact that no competitive drug product had been approved, the court in *Fisons* held that the plaintiff had standing because the FDA's regulation had the "clear and immediate potential" to hurt Fisons competitively. *Id.* at 862 (quoting *Associated Gas Distribs. v. Federal Energy Regulatory Comm'n,* 899 F.2d 1250, 1259 (D.C.Cir.1990)).

The position taken in *Fisons,* however, recently has been rejected in this jurisdiction. In *Bristol–Myers Squibb Co. v. Shalala,* No. 94–1516, slip op. (D.D.C. Feb. 28, 1995) (*BMS I* ), plaintiff challenged another ruling of the FDA that allowed generic manufacturers to market drugs and omit from the label the indications for which a pioneer manufacturer enjoyed exclusivity. *Id.* at 3. The court held that plaintiff's harm was purely speculative because no competitor had come forward and no competing product actually had been approved. *Id.* at 7.

---

**2.** A non-conforming bulk substance is a bulk substance that does not conform to the mono-

graph for the bulk substance used to manufacture the pioneer drug product.

The court in *BMS I* concluded that *Fisons* had incorrectly interpreted the case law on imminent competitive injury. It pointed out that all of the cases which BMS cited in support of its claim of "imminent competitive" injury involved more immediate threats of competition than those alleged by plaintiff. *See BMS I*, No. 94–1516, slip op. at 6 (distinguishing *Investment Co. Inst. v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); *Panhandle Producers & Royalty Owners Ass'n v. Economic Regulatory Admin.*, 822 F.2d 1105 (D.C.Cir.1987); and *Associated Gas*, 899 F.2d at 1250).[3] The court pointed out that in each of those cases the harm was held to be sufficiently imminent because a competitor already had been approved to enter the field of competition. The court specifically noted that *Fisons'* reliance on *Associated Gas* was misplaced because, in that case, an illegal business transaction already had occurred which formed the basis for concluding that harm to the plaintiff was imminent. *Id.*

This Court agrees with *BMS I*'s reading of the case law on imminent competitive injury. The test for injury in fact as stated by the Supreme Court in *Lujan* is clear: plaintiff must assert a harm that is not merely potential but "actual or imminent." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Until a competitor enters the field, plaintiff faces nothing more than a potential for harm which will not become actual or imminent unless and until a competitor comes forward.

Here, plaintiff contends that it is exposed to imminent competitive injury because the FDA's October 4 announcement in the Federal Register indicates that there is pending at the FDA an application for a finished dosage form of bleomycin sulfate. Plaintiff argues that the FDA's approval of a finished competitive drug product is imminent because the agency would not accept the application for a bulk drug unless it also had an application for a finished drug product. By its own account, however, plaintiff's claim of imminent harm is speculative. Plaintiff does not contend that the FDA has received an application for a competitive drug product; rather, plaintiff claims that it is threatened with imminent harm based on an "indication" that the FDA has received an application for a drug product. Plaintiff's belief that harm is imminent is not sufficient to confer standing.

Even assuming that plaintiff is correct in asserting that the FDA has received an application for a finished drug product, that fact alone does not threaten plaintiff with imminent economic harm. Under the existing agency regulations, a finished product application still must be evaluated to ensure that it meets the same standards contained in the monograph for the pioneer drug product. 21 C.F.R. § 314.92(a)(2). The mere fact that the FDA receives an application for a finished drug product does not guarantee that it will be approved immediately, if at all.

Furthermore, upon approval of a drug product, plaintiff still would not suffer any competitive injury until the FDA took the additional step of rating the generic form of the drug as therapeutically equivalent to Blenoxane. Without this rating, plaintiff would not face competitive harm because pharmacists would not be authorized to substitute the drug for Blenoxane. Because the FDA is several steps away from taking action which might cause plaintiff any competitive harm, the Court finds that plaintiff does not suffer "imminent" harm and thus does not have standing.

### B. Injury Is Speculative

Assuming arguendo that *Fisons* provides the correct rule of law, plaintiff still would not be able to establish injury in fact because the competitive harm which it alleges is more speculative than in *Fisons*. In *Fisons*, the court concluded that the FDA's ruling had the "clear and immediate potential" for harm because any drug product approved under the challenged regulation would not have been subjected to the bioequivalence and purity testing mandated by statute. *Fisons*, 860 F.Supp. at 861.

Plaintiff in this case argues that the FDA's ruling is certain to lead to competitive injury because any drug product based on a nonconforming bulk substance will inevitably fail

---

**3.** Plaintiff again cites these cases in its Opposition to Defendants' Motion to Dismiss.

to satisfy the standards contained in the finished product monograph for Blenoxane. While the Court must accept as true material allegations made by the plaintiff in its complaint, the Court may also distinguish allegations of facts from allegations that are really predictions. *United Transp. Union,* 891 F.2d at 911.

Here, the FDA's ruling does not clearly threaten plaintiff with competitive harm because the decision applies only to bulk substances. Plaintiff's Motion for Summary Judgment, Ex. B at 1. As a finished drug product, plaintiff's own product, Blenoxane, never faces competition from bulk substances, which are not marketed, but only from other finished drug products. Because the FDA's November 9 ruling did not alter the characteristics of safety, efficacy, or purity for finished generic bleomycin sulfate drug products, it does not directly adversely affect plaintiff. While the challenged decision allows generic manufacturers to employ non-conforming bulk substances in the production of finished products, the FDA continues to require that finished generic antibiotic drug products conform to the monograph for the pioneer version or to otherwise be a duplicate of it. 21 C.F.R. § 314.92(a)(2). In this case, a finished drug product approved under the FDA's decision must conform to the very same standards as Blenoxane, including standards for sterility and non-pyrogenicity.

Finally, even if plaintiff is correct in asserting that a finished drug product derived from a non-conforming bulk substance will never be able to satisfy the monograph for the pioneer finished drug product, then the illegal competition plaintiff fears will never occur because under existing regulations the FDA cannot approve finished generic drug products that do not conform to the monograph for the pioneer finished product. Thus, the Court finds that plaintiff's harm is purely speculative and does not survive the standing inquiry.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss for lack of standing, and denies plaintiff's motion for summary judgment. An appropriate Order accompanies this Opinion.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is granted. It hereby further is

ORDERED, that plaintiff's motion for summary judgment is denied.

SO ORDERED.